UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANTZY MERISIER, CLERNIDE N. MERISIER | ) | |
| and FRANTZY MERISIER on behalf of | ) | |
| N.M. (a minor) and Z.M. (a minor), | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  14-13445-JGD |
| JOSHUA ELLENDER and GREGORY MARTELL, | ) | |
| individually and as police officers in the | ) | |
| Police Department for the Town of | ) | |
| Mansfield, MANSFIELD POLICE | ) | |
| DEPARTMENT and TOWN OF MANSFIELD, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

July 6, 2016

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case involves an incident which took place during the early morning of October 26,

2013, when the Mansfield Police saw the plaintiff, Frantzy Merisier, in his car outside of his

apartment building in Mansfield, Massachusetts.  It is undisputed that the police escorted

Mr. Merisier to his apartment and entered the apartment, where a disturbance ensued.  The

police contend that Mr. Merisier was intoxicated, which he denies.

Frantzy and his wife, Clernide Merisier, brought suit on their own behalf, and on behalf

of their two minor children, against the Town of Mansfield Police Department, the Town of

Mansfield, and two police officers – Joshua Ellender and Gregory Martell – in their individual and official capacities.  By their complaint, the plaintiffs allege that the defendants are liable under 42 U.S.C. § 1983 for violating Mr. Merisier's constitutional rights in connection with a warrantless entry into his home and use of excessive force (Counts I - III),[1] that such conduct constitutes a violation of the Massachusetts Declaration of Rights (Counts IV – VI), and that the defendants are liable for assault and battery (Count VII), intentional infliction of emotional distress (Count VII) (duplicate numbering), and false arrest (Count VIII).

This matter is presently before the court on the defendants' motion for summary judgment.  Docket No. 21.  The defendants deny any liability, and further claim that they are protected by the doctrine of qualified immunity.  For the reasons detailed herein, the motion for summary judgment is ALLOWED IN PART and DENIED IN PART as follows.  The claims against the Mansfield Police Department, the Town of Mansfield and Joshua Ellender and Gregory Martell in their official capacities are dismissed, as are the claims alleging violations of the Massachusetts Declaration of Rights (Counts IV-VI).  The claims alleging violations of 42 U.S.C. § 1983 (Counts I-III) are limited to claims challenging the warrantless entry into the plaintiffs' home, and alleging use of excessive force by the police officer defendants in their individual capacities.  The claim for false arrest (Count VIII) is deemed to be a claim of false imprisonment. The motion for summary judgment is otherwise denied.

---

[1]  The constitutional bases for the plaintiffs' claims are unclear from the Complaint.  The plaintiff has only argued in opposition to the motion for summary judgment that the defendants wrongfully entered his home without a warrant and used excessive force, in violation of his constitutional rights.  This court assumes that any other alleged constitutional violations have been waived.

## II.  <u>STATEMENT OF FACTS</u>[2]

The following facts are undisputed, unless otherwise indicated.  Where the facts are in

dispute, they must be viewed in favor of the non-moving party, <u>i.e.</u>, the plaintiffs.  <u>See</u> <u>Vineberg</u>

<u>v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008).

Plaintiff Frantzy Merisier spent most of the day of October 25, 2013 with friends in

Connecticut, after which he drove to Brockton, Massachusetts to attend a child's birthday

party.  DF ¶ 1.  Mr. Merisier consumed alcohol at the party.  <u>Id.</u>  After the party, he pulled into

the parking lot of his apartment complex, and decided to remain in his car.  DF ¶ 2.  He

contends that he was awake in the car listening to music.  Pl. Ex. A (F. Merisier Dep.) at 79-80.

At approximately 2:00 a.m., Officer Martell, a Mansfield police officer on routine patrol, noticed

Mr. Merisier sitting in his car, and asserts that he thought that the occupant of the car

appeared to be sleeping.  Def. Ex. B (Officer Ellender's report); Def. Ex. C (Officer Martell's

report).  Officer Martell called dispatch, reported the car and said that he was going to wake

the driver.  Def. Ex. C.  Officer Ellender radioed that he would join him at the location.  <u>Id.</u>

According to Officer Martell, he woke Mr. Merisier up by knocking on the window of the

car.  <u>Id.</u>  Mr. Merisier appeared drunk and soon became belligerent, both while in the car and

upon exiting.  <u>Id.</u>  This was confirmed by Officer Ellender who had arrived on the scene.  Def. Ex.

B.  The Officers assert that there was a strong odor of alcohol coming from the car, Mr. Merisier

had slurred speech, had trouble locating his license, was disoriented, had trouble balancing and

had glassy and red eyes.  Def. Exs. B & C.  According to Mr. Merisier, he was not drunk, and

---

[2]  The facts are derived from (1) the Defendants' Statement of Undisputed Material Facts ("DF") and the exhibits thereto ("Def. Ex. __") (Docket No. 23); and (2) the Plaintiffs' Response to the Defendants' Statement of Facts ("PR") along with the exhibits thereto ("Pl. Ex. __") (Docket No. 27).

could walk unassisted to his apartment.  Pl. Ex. A at 85.  The police did not administer a field sobriety test.

According to the police, Mr. Merisier provided his driver's license, with difficulty, and they eventually convinced Mr. Merisier to walk to his apartment where he could spend the night.  Def. Exs. B & C.  They also convinced him to use his key to open the door, but ended up ringing the bell because Mr. Merisier was ranting and raving as he walked to the apartment.  Def. Ex. B.  It is undisputed that the Officers went with Mr. Merisier to his apartment, and insisted on speaking with his wife, Clernide.  Def. Ex. C; Pl. Ex. A at 87-88.

Ms. Merisier was awakened by the noise, came out of the bedroom, and initially stated that she would take control of the plaintiff.  Def. Exs. B & C.  According to the Officers, however, Mr. Merisier immediately became more belligerent and started to scream and yell, so that it was not appropriate for them to leave.  Id.  Mr. Merisier went into the bedroom and slammed the door, but then came out and took several steps towards the Officers in an aggressive manner.  Def. Ex. C.  The police moved towards Mr. Merisier, who turned around and retreated into the bedroom, again slamming the door.  Id. The police followed him into the bedroom.  Def. Exs. B & C.  According to the police, when they entered into the bedroom, Mr. Merisier lunged at them, causing all of them to collide with a bureau, and almost causing a television to fall.  Def. Ex. B.  The police handcuffed Mr. Merisier and told him that they would take him to the station unless he calmed down.  Def. Exs. B & C.  He quieted down, his handcuffs were removed, and the police left him with his wife in the apartment.  Id.; DF ¶ 12.

Mr. Merisier tells a different story.  According to him, he only consumed two beers the entire day before the incident.  Pl. Ex. A at 72.  He was sitting in his car listening to music when

the police approached him.  Id. at 79.  He was awake and he saw them approach.  Id. at 80-81.

Moreover, Mr. Merisier claims that the police ordered him out of his car and made him walk to

his apartment and open the door with his key, in order to prove that he lived there.  Id. at 85-

86.  He objected to their entering his apartment, but the police came in anyway, and refused to

leave despite his objections.  Id. at 87-88, 90.  They also refused to leave after Ms. Merisier

asked them to do so.  Id. at 92.  The police told Mr. Merisier to go into his bedroom so they

could talk to his wife privately, apparently about whether or not he was a violent individual and

could be left with her.  See id. at 92-93.  At some point, his two minor children were awakened

as well.  Id. at 92.

According to the plaintiffs, Mr. Merisier entered his bedroom and started to change out

of his clothes.  Id. at 93.  The police burst into his bedroom without permission, and then

shoved him from behind into the bureau.  Id. at 93-96.  Furthermore, according to Mr. Merisier,

his head hit the corner of the TV which was on the bureau, the TV hit the ground and then he

hit the ground face first.  Id. at 96-97.  He was only on the ground a few seconds, and the police

helped him up and handcuffed him.  Id. at 97-98.  The cuffs were on for one to three minutes

and then removed.  Id. at 99.  Mr. Merisier disputes that there was any reason to put him in

handcuffs.  He contends that when they left, the police told him that he needs "to learn how to

keep [his] mouth shut."  Id. at 104.

After the police left, Mr. Merisier went outside for a few minutes.  Id. at 105.  In the

morning he went to the police station to complain about the way he had been treated, and

then to the hospital because he had a bump on his head.  Id. at 105-109, 112.  He contends that

he suffered headaches for several months after the incident, and on occasion thereafter.  Id. at

120-22.  About a week to ten days after the incident, he sought treatment from a chiropractor

for back pain, which he contends is continuing and is the result of this incident.  Id. at 118.  He

also claims to have suffered post-traumatic stress disorder.  Id. at 123-24.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

### A.      Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co.,

794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822

(1st Cir. 1991)) (additional citation omitted).  The burden is on the moving party to show, based

upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either

party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug,

Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to

sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and

citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving

party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd.,

794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing

properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d

836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere

allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  Applying these principles to the instant case compels the conclusion that the motion for summary judgment should be ALLOWED IN PART and DENIED IN PART.

### B.   Warrantless Entry

The plaintiffs claim that the defendants violated their Fourth Amendment rights against unlawful searches and seizures by their entry in the Merisiers' home without a warrant.  This court finds that the existence of disputed facts precludes the entry of summary judgment on this claim, both on the merits and on the basis of qualified immunity.

It is a "'basic principle of Fourth Amendment law' that searches and seizures inside the home without a warrant are presumptively unreasonable[.]"  Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068 (2004) (quoting Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (footnote omitted)).  Nevertheless, as both parties agree, there are exceptions, and courts "have recognized that a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant."  Michigan v. Tyler, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949-50, 56 L. Ed. 2d 486 (1978), and cases cited.  In the instant case the defendants contend that the warrantless entry was appropriate to ensure Mr. Merisier's safety and to bring him to the custody of his wife.  See Tarabolski v. Town of Sharon, 70 F.3d 110 (unpub. op.), 1995 WL 670989, *1 (1st Cir. Nov. 13, 1995) ("the same facts which justified [the police officer] in concluding that Tarabolski required protective custody would also justify a reasonable officer in

believing that an emergency warrantless entry was appropriate.").  They also rely on the

Massachusetts protective custody statute, Mass. Gen. Laws ch. 111B, § 8, which provides in

relevant part as follows:

> Any person who is incapacitated may be assisted by a police officer with
> or without his consent to his residence, to a facility, or to a police station.
> To determine for purposes of this chapter only, whether or not such
> person is intoxicated, the police officer may request the person to submit
> to reasonable tests of coordination, coherency of speech, and breath.
>
> * * *
>
> A police officer acting in accordance with the provisions of this section
> may use such force as is reasonably necessary to carry out his authorized
> responsibilities.  If the police officer reasonably believes that his safety or
> the safety of other persons present so requires, he may search such
> person and his immediate surroundings, but only to the extent necessary
> to discover and seize any dangerous weapons which may on that
> occasion be used against the officer or other person present[.]

As the defendants describe the situation, "Defendants Ellender and Martell were simply

insuring that an incapacitated Plaintiff Frantzy – who admittedly had consumed alcohol, was

belligerent at times with the officers, i.e., disorderly – was placed in the care of his wife Plaintiff

Clernide."  Defs.' Mem. (Docket No. 22) at 6.  Therefore, they contend that they are entitled to

judgment as a matter of law on this claim.

       This court makes no ruling on whether if the facts were as presented by the defendants,

the warrantless entry would have been appropriate.  The problem with the defendants'

argument is that the facts relating to Mr. Merisier's conduct are in dispute, and he has

challenged the defendants' description of his being drunk, belligerent or disorderly.  Accepting

Mr. Merisier's version of events as true, as this court must in the context of the motion for

summary judgment, a factfinder may conclude that there was no justification for the

warrantless entry.  The facts will have to be established at trial, and summary judgment is inappropriate.

For the same reason, the defendants are not entitled to qualified immunity at this time. Qualified immunity shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed.2d 523 (1987), and cases cited.  "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  As the First Circuit recently explained:

> The rules for granting qualified immunity are well established.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, – U.S. –, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Id.* (quoting *Reichle v. Howards*, – U.S. –, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)).
>
> This court adheres to a two-step approach to determine whether a defendant is entitled to qualified immunity: "We ask '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation.'"  *Mlodzinski [v. Lewis]*, 648 F.3d [24, 32 (1st Cir. 2011)] (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009)).  The second prong, in turn, has two elements: "We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the

> particular factual context of the case, a reasonable officer would have
> understood that his conduct violated the right." *Id.* at 32–33.

Stamps v. Town of Framingham, 813 F.3d 27, 33-34 (1st Cir. 2016) (footnoted omitted).

In the instant case, the standard for warrantless entry into someone's home was well established at the time of the incident.  Accepting Mr. Merisier's facts as true, the record could support a finding that no reasonably competent officer would have concluded that entering his home without consent was lawful.  Under such circumstances, qualified immunity is not appropriate.  See Lopera v. Town of Coventry, 640 F.3d 388, 396 (1st Cir. 2011) (no qualified immunity if it is obvious that no reasonably competent officer would have concluded that the challenged action was lawful) (quotation and citation omitted)).  Rather, "[t]he Court will reserve judgment on whether the officers are entitled to qualified immunity, until the facts are fully developed at trial.  At present, there are insufficient facts upon which to base a conclusion as to whether a reasonable officer should have known he was violating (Merisier's) constitu-tional rights, if in fact there was such a violation."  Petro v. Town of West Warwick ex rel. Moore, 770 F. Supp. 2d 475, 482 (D.R.I. 2011).

### C.    **Excessive Force**

The defendants have also moved for summary judgment on Mr. Merisier's claims based on allegations of excessive force.  Again, in light of the disputed facts in this case, summary judgment must be denied and qualified immunity is not available at this stage in the proceedings.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental

interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d

443 (1989) (quotations and citations omitted).  The critical question is "whether the defendant

officer employed force that was unreasonable under the circumstances." Raiche v. Pietroski,

623 F.3d 30, 36 (1st Cir. 2010) (quotations and citations omitted).  An assessment of

"reasonableness" "must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

"Not every push or shove" constitutes a violation of the Fourth Amendment, and the

assessment of reasonableness must allow "for the fact that police officers are often forced to

make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving

– about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S. Ct.

at 1872.

The disputed facts preclude the entry of summary judgment on the plaintiff's excessive

force claim.  The defendants assert that "Plaintiff Franzty was controlled by the office[r]s only

after he first charged at them in the apartment, and then attempted to go back to his bedroom

and shut the door, where Frantzy then suddenly lunged at them.  Their response to his actions

was simply to control and handcuff him, where they shortly thereafter uncuffed him.  There

was no excessive force." Defs. Mem. (Docket No. 22) at 8.  The plaintiffs, however, contend

that the Officers barged into the bedroom for no reason, and shoved Mr. Merisier from behind

into the bureau, causing him serious injury.  They also contend that the Officers handcuffed him

despite the fact that he did nothing wrong and was not charged with any crime.  Under the

scenario described by Mr. Merisier, the Officers' alleged conduct could be found to "be plainly

in excess of the force necessary under the circumstances, and thus excessive under the Fourth

Amendment." <u>Young v. City of Los Angeles</u>, 655 F.3d 1156, 1167 (9th Cir. 20100) (internal

quotations and citation omitted).  Moreover, qualified immunity is not appropriate in this case

where the parameters of what constitutes excessive force are well established, and it could be

found that a reasonable officer would know that using force against Mr. Merisier sufficient to

cause him permanent or long-lasting physical harm was unreasonably excessive.  <u>See Morelli v.</u>

<u>Webster</u>, 552 F.3d 12, 24 (1st Cir. 2009) (denying qualified immunity where the force used was

sufficient to tear the rotator cuff of a non-violent person, and defendant's conduct was

"outside the universe of protected mistakes" subject to qualified immunity).  Where, as here,

the "determination of liability based on the use of excessive force and availability of qualified

immunity . . . are premised on the same facts, it is a factual inquiry that needs to be presented

to the jury." <u>Herrera v. Davila</u>, 272 F. Supp. 2d 154, 166 (D. P.R. 2003).

   D.   **Municipal Liability**

   The complaint purports to state a claim against the Town of Mansfield Police Depart-

ment.  Since that is not a separate entity from the Town, the claims against the Police

Department will be dismissed.  <u>See Stratton v. City of Boston</u>, 731 F. Supp. 42, 46 (D. Mass.

1989) (dismissing claims against the "Boston Police Department").  With respect to the

purported claims against the Town of Mansfield, this court finds that the plaintiffs have failed

to establish that the Town either had an improper policy or practice, or failed to discipline, train

and supervise Officers Ellender and Martell.  Therefore, the claims against the Town will be

dismissed as well.[3]

---

[3] While the plaintiffs have named the municipality in the caption of the Complaint, it is unclear which
claims are directed to the Town.

As a general statement, a municipality "may be liable under [§ 1983] if the governmen-tal body itself 'subjects a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.'" Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   While municipalities may be liable under § 1983 for their own unconstitutional actions, they are not vicariously liable for the actions of non-policymaking employees.   Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011), and cases cited.   "Thus, a plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.   Such a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury."   Id. (internal quotations and citations omitted).   As detailed in their memorandum, the plaintiffs here assert two types of Monell-type claims, albeit neither with any specificity.   First the plaintiffs seem to contend that the Town has a policy or practice which itself violates federal law, or directs an employee to do so.   See id. at 51-52.   The second claim purports to assert a failure to train the Officers.   "Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies."   Id. at 52.   The record here is insufficient to sustain either type of claim.

While the plaintiffs make reference to a government "policy or custom," they do not identify it with any particularity.   See Pl. Mem. (Docket No. 25) at 6.   Similarly, they make only a generalized claim of failure "to discipline, train and supervise Defendants Ellender and Martell." Id.   As they argue:

> As it stands, it appears in the Town of Mansfield, it is up to police discretion to determine if a person should be placed in protective custody. While the Statute requires the person be first incapacitated prior to such custodial situation, Frantzy was placed in protective custody while the Officers were still unsure if he was indeed incapacitated.  There was no sobriety test completed, nor offer of a breathalyzer, simply conversation between the parties.  While a protective custody arrest is not treated like that of a typical arrest for criminal records purposes, any custodial situation requires specific procedures, which was clearly not followed here.

Id. at 6-7.  However, even accepting the plaintiffs' version of events as true, there is no support for any claim of improper policy or failure to train.

As an initial matter, this court recognizes that the plaintiffs have complained that the Town failed to produce requested documents, including specific policies, procedures and customs.  See id. at 6.  According to the Docket, the Town agreed to produce these materials, albeit after the summary judgment motions were completed.  Even assuming that the production was not adequate, however, the plaintiffs have failed to identify any potential deficiencies in policies or training.  The Officers contend that they found Mr. Merisier to be inebriated before they brought him to his house.  They noted his slurred speech, smell of alcohol, red eyes, lack of focus, instability and the like.  There is no requirement in the protective custody statute that the police conduct any field sobriety tests or a breathalyzer, although they "may request" a person to submit to such tests.  Mass. Gen. Laws ch. 111B, § 8.  Since the police were obviously aware of the factors they must consider before returning a person to his or her home or otherwise placing the person in protective custody, there is no basis for a claim of improper custom, policy or practice, or of a failure to train.  Therefore, the claims against the Town will be dismissed.

[14]

E.       **Claims Against the Officers in Their Official Capacities**

It appears from the caption of the Complaint that the plaintiffs intended to bring the

claims against Officers Ellender and Martell in both their individual and official capacities.

However, a suit against a public official in his official capacity "is 'only another way of pleading'

an action against the public entity that the official represents." Stratton, 731 F. Supp. at 46

(quoting Monell, 436 U.S. at 690 n.55, 98 S. Ct. at 2035 n.55).  In light of the court's ruling in

favor of the Town of Mansfield, the claims against the Officers in their official capacities will

likewise be dismissed.

F.       **State Law Tort Claims**

The plaintiffs have asserted various state law tort claims.  The existence of disputed

issues of material fact precludes the entry of summary judgment on each of these claims.

1.       **Intentional Infliction of Emotional Distress**

Accepting the plaintiffs' facts as true, which this court must, there is sufficient evidence

from which a factfinder may conclude that the defendants are liable for intentional infliction of

emotional distress.  Specifically, but without limitation, Mr. Merisier argues that the police

forced themselves into his home, without justification, engaged in a verbal altercation with him

in front of his family, and then, in the bedroom, pushed him and handcuffed him without any

adequate cause.  It is alleged that Mr. Merisier suffered physical and emotional distress

requiring psychiatric services, and that his children have also suffered psychological issues as a

result.  While the question is a close one, at this juncture it would be best for the facts to be

determined by a jury, which can also assess the severity of the alleged wrongful conduct and

damages.

[15]

"To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." Sena v. Commonwealth, 417 Mass. 250, 263-64, 629 N.E.2d 986, 994 (1994) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976)). "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and utterly intolerable in a civilized community." Id. at 264, 629 N.E.2d at 994 (internal quotation and punctuation omitted). "Liability cannot be founded upon mere insults, threats, or annoyances." Id. "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citations omitted).

In the instant case, the jury is best suited to determine whether the defendants forced their way into the plaintiffs' home, without cause, in the middle of the night, caused a ruckus to wake the family and humiliate Mr. Merisier, and then wrongfully, and without cause, hand-cuffed him and threatened him. Again, while the question is a close one, this court concludes that there is sufficient evidence of conduct which would support a finding of intentional infliction of emotional distress to survive the defendants' motion for summary judgment. See Barbosa v. Conlon, 962 F. Supp.2d 316, 334 (D. Mass. 2013).

## 2. False Arrest

The defendants have moved to dismiss the claim of false arrest on the grounds that they acted properly and because Mr. Merisier was never arrested. This court concludes that while Mr. Merisier was not arrested, he has stated a claim of false imprisonment. Therefore,

accepting the plaintiffs' facts for purposes of the motion for summary judgment, this count will not be dismissed.

"The tort of false imprisonment consists of the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." Noel v. Town of Plymouth, 895 F. Supp. 346, 354 (D. Mass. 1995), and cases cited. In their motion for summary judgment, the defendants argue that "[t]he claim for false imprisonment, in this case, hinges on the determination as to whether there was probable cause to arrest the Plaintiff." Defs. Mem. (Docket No. 22) at 11 (citing Ortiz v. County of Hampden, 16 Mass. App. Ct. 138, 140 (1983)). Thus, according to the defendants, since the Officers "had reasonable suspicion to engage the Plaintiff Frantzy, and probable cause to place him into protective custody[,]" the claim of false arrest should be dismissed. Id. However, for the reasons stated above, there are disputed facts as to whether the Officers acted reasonably or had probable cause to place the plaintiff into protective custody. Therefore, summary judgment is not appropriate on this count.

The defendants also argue that this claim should be dismissed because Mr. Merisier was not arrested. While it is more appropriate for this count to be labelled "false imprisonment," this court will not dismiss the claim on this basis. The Supreme Court has itself referred to both the tort of false arrest and the tort of false imprisonment collectively. See Wallace v. Kato, 549 U.S. 384, 388-89, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007). As the Court explained:

> False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in

which he is." M. Newell, Law of Malicious Prosecution, False Imprison-
ment, and Abuse of Legal Process § 2, p. 57 (1892) (footnote omitted).
See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 27:2,
pp. 940–942 (1990). We shall thus refer to the two torts together as false
imprisonment.

Kato, 549 U.S. at 388-89, 127 S. Ct. at 1095.

The Court explained further that "[t]he sort of unlawful detention remediable by the

tort of false imprisonment is detention *without legal process*[.]" Id., and authorities cited. The

defendants are correct that the conduct challenged in the instant case is properly characterized

as false imprisonment as opposed to false arrest. With that understanding, this count will not

be dismissed at this juncture, just renamed. There is no harm to the defendants since they

clearly understood the basis of the claim they were defending.

### 3.    Assault and Battery

The plaintiff has also asserted a claim for assault and battery. "Assault and battery is

the 'intentional and unjustified use of force upon the person of another, however slight, or the

intentional doing of a wanton or grossly negligent act causing personal injury to another.'"

Sietins v. Joseph, 238 F. Supp. 2d 366, 380 (D. Mass. 2003) (quoting Jesionowski v. Beck, 937 F.

Supp. 95, 105 (D. Mass. 1996)). Where, as here, "a plaintiff alleges both a § 1983 excessive

force claim and common law claims for assault and battery, [the] determination of reasonable-

ness of the force used under § 1983 controls [the] determination of the reasonabless of the

force used under the common law assault and battery claims." Raiche v. Pietroski, 623 F.3d 30,

40 (1st Cir. 2010). Because, as detailed above, the relevant facts relating to the use of excessive

force against Mr. Merisier are in dispute, the motion for summary judgment must be denied

with respect to the assault and battery claim as well.

[18]

G.    **Massachusetts Declaration of Rights**

Counts IV – VI of the Complaint purport to state claims for violations of the Massa-
chusetts Declaration of Rights.  The defendants have moved to dismiss these counts on the
grounds that a party cannot bring a cause of action for a general violation of the Massachusetts
Declaration of Rights where there is a state court remedy, such as a violation of the Massachu-
setts Civil Rights Statute, Mass. Gen. Laws ch. 12, §§ 11H and 11I.  See Parsons ex rel. Parsons v.
Town of Tewksbury, No. 091595, 2010 WL 1544470 at *4 (Mass. Super. Jan. 19, 2010).  The
issue has not been decided by any Massachusetts appellate court.  See and compare Podgurski
v. Dep't of Corr., No. 13-11751-DJC, 2014 WL 4772218, at *7 (D. Mass. Sept. 23, 2014) (denying
motion to dismiss claim alleging violation of Article 26 of the Massachusetts Declaration of
Rights, which prohibits cruel and unusual punishment); Do Corp. v. Town of Stoughton, No. 13-
11726-DJC, 2013 WL 6383035, at *13 (D. Mass. Dec. 6, 2013) (dismissing claim under the
Massachusetts Declaration of Rights where the MCRA provided vehicle to sue for racial
discrimination).  This issue does not need to be resolved in the instant case, since the plaintiffs
do not oppose the dismissal of these counts.  Therefore, they will be dismissed.

## IV.  CONCLUSION

For all the reasons detailed herein, the Defendants' Motion for Summary Judgment
(Docket No. 21) is ALLOWED IN PART and DENIED IN PART.  The claims against the Mansfield
Police Department, the Town of Mansfield and Joshua Ellender and Gregory Martell in their
official capacities are dismissed, as are the claims alleging violations of the Massachusetts
Declaration of Rights (Counts IV-VI).  The claims alleging violations of 42 U.S.C. § 1983 (Counts
I-III) are limited to claims challenging the warrantless entry into the plaintiffs' home, and

alleging use of excessive force by the police officer defendants in their individual capacities.

The claim for false arrest (Count VIII) is deemed to be a claim of false imprisonment.  The

motion for summary judgment is otherwise denied.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge